**W.B. MARVIN MANUFACTURING COMPANY, Plaintiff-Appellant,**

v.

**HOWARD BERGER COMPANY, INC. d/b/a Domestic Broom & Brush Company, Defendant–Appellee.**

Docket No. 01–7689.

United States Court of Appeals, Second Circuit.

April 29, 2002.

William R. Hansen, New York, NY, for Appellant.

Thomas A. Catalano, New York, NY, for Appellee.

Present McLAUGHLIN, POOLER and B.D. PARKER, Jr., Circuit Judges.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of said District Court be and it hereby is AFFIRMED.

Plaintiff W.B. Marvin Manufacturing Company ("Marvin") appeals from an order of the United States District Court for the Eastern District of New York denying Marvin preliminary injunctive relief on a trade dress claim against Howard Berger Company, Inc. ("Berger").

Marvin manufactures adjustable window screens. During the 1990s Berger distributed Marvin's screens in the New York City area. However, in 2000, Berger solicited bids from Chinese companies for the manufacture of its own adjustable window screen. Once Berger received a satisfactory bid, it supplied the Chinese company with three adjustable screens, including Marvin's screen, for reverse engineering. Berger's art department had access to the carton and labeling for Marvin screens as well as the labels and packaging from other screen manufacturers when they developed Berger's packaging and label.

In February 2000, Marvin learned that Berger had begun marketing adjustable screens, but it was not until August 2000 that Marvin's president, Angus Randolph, first saw the Berger screen at a trade show. Randolph viewed the Berger screen, label, and packaging as counterfeits of Marvin's original designs.

On November 9, 2000, Marvin sued Berger under the Lanham Act, alleging false designation of origin, unfair competition, and false designation of geographic origin. Marvin also asserted New York statutory and common law claims. In its complaint, Marvin described its trade dress as a combination

of non-functional design features and colors, which include generally a rectangular shape with two beige easy-gliding metal runners on the top and bottom of a dark coated screen with varnished, natural, grooved pine wood end pieces fastened with brass brads with at least two set[s] of two brads on each end piece.

Marvin also claimed as distinctive trade dress the label that it affixes to each screen and its shipping package, which converts into a product display.

At the time Marvin sued, its package and label were white with blue print and included slogans such as "The Affordable Alternative to Custom Screens" and "Keeps Out Bugs.".

Randolph testified that on January 5, 2001, he spoke with a Berger representative who expressed an interest in settlement and said Berger would be willing to make some changes in its screens to appease Marvin.[1] The Berger representative also implied that he would like Marvin to buy screens from the Chinese company through Berger. The parties were supposed to meet to discuss settlement on January 19, 2001, but this meeting did not take place.

At the end of January, Marvin heard from its customers that Berger screens were being shipped from China. On February 15, 2001, Marvin moved for a preliminary injunction. Between filing its complaint and its motion, Marvin changed its packaging trade dress. Without apparent access to the new Marvin trade dress, Berger also changed some aspects of its packaging. Oddly, both companies now used green rather than blue lettering on their packages.

After a hearing, Magistrate Judge Viktor V. Pohorelsky, to whom the motion had been referred, issued an oral report and recommendation, recommending that the district court deny the injunction. In findings of fact unchallenged by either party, the magistrate judge described both parties' trade dress at the time of the hearing. He found that "[w]ith small differences, the defendant's screens are identical to the plaintiff[']s." Although the defendant's label was slightly larger than the plaintiff's, it was placed in substantially the same spot as the Marvin label. Both labels contained product information including numbers indicating the screen's size. The Berger label included the slogan, "Keeps bugs out!," but the 2001 Marvin label did not. Berger's label depicts the facade of a house while Marvin's label shows a woman placing a screen into a window. The product name on Berger's screen is "Comfort Zone." The Marvin screen bears the name "Marvin." Both parties use a form of box construction known as "PDQ" for "Pretty Darn Quick" that is attractive to retailers because the box can be converted into a display rack. Both use green lettering and graphics on a white background. However, the graphics are different.

In his report and recommendation, Judge Pohorelsky found that Marvin had not shown a likelihood of success because it had not demonstrated the non-functionality of its product or likely confusion. The magistrate judge did find, however, that Marvin had presented serious issues going to the merits that were a fair ground for litigation. Because the magistrate judge also found that the balance of hardships tilted toward Berger, he recommended denying a preliminary injunction.

The district court agreed with the magistrate judge both on the merits of Mar-

---

1. Marvin claims that an additional discussion occurred in November; however, the record pages that Marvin cites do not indicate when the conversation took place.

vin's claim and on the balance of hardships and therefore denied injunctive relief.

On appeal, Marvin principally argues that the district court (1) misapplied governing Supreme Court and Second Circuit precedent on functionality; (2) erred in its likelihood of confusion analysis; and (3) erred in balancing the hardships between the parties. We affirm because we agree with the district court that Marvin has not shown a likelihood of success in demonstrating likely confusion and the balance of hardships does not tilt in Marvin's favor. We do not reach the question of functionality.

We review the district court's grant or denial of a preliminary injunction for abuse of discretion, which occurs when the district court applies an incorrect legal standard, makes a material and clearly erroneous finding of fact, "or issues an injunction that contains an error in its form or substance." *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir.1997). A plaintiff seeking a preliminary injunction "must show (1) irreparable harm and (2) either (a) that it is likely to succeed on the merits or (b) sufficiently serious questions regarding the merits of the claim to make them fairly litigable, with the balance of hardship tipping decidedly in the plaintiff's favor." *Id.* at 998–99. To show likelihood of success on a trade dress infringement claim, the plaintiff must show, among other things, that its trade dress is not functional and that there is a likelihood of confusion between its trade dress and the defendant's trade dress. *Id.* "[A] showing of a high probability of confusion creates a presumption of irreparable harm." *Id.* at 999. However, this presumption "is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief." *Tough Traveler, Ltd. v.*

*Outbound Prods.*, 60 F.3d 964, 968 (2d Cir.1995).

■ We review the district court's determination with regard to each of the *Polaroid* factors, *see Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961), for clear error but determine the ultimate issue of whether there is a likelihood of confusion *de novo*. *Fun–Damental Too*, 111 F.3d at 1003. There is no clear error in the district court's findings that Marvin's trade dress is not a strong identifier of its source, the screens are proximate in the market place, there is no significant difference in the quality of the screens, the bad faith element did not weigh in Marvin's favor, and Marvin did not show actual confusion. The district court correctly found that the screens themselves are very similar. However, the district court also concluded correctly that the labels on the screens and the packaging for the screens were not particularly similar. "Labels can be integral, if not dispositive factors in determining overall similarity of trade dress." *Nora Beverages v. Perrier Group of Am.*, 269 F.3d 114, 122 (2d Cir.2001). Therefore, similarity of trade dress weighs only weakly, if at all, in favor of Marvin. The district court found the evidence on sophistication of buyers to be equivocal but held at least as to wholesalers, Marvin's and Berger's immediate customers, sophistication weighed in favor of Berger. Marvin argues that the court instead should have considered the ultimate consumers, homeowners who have less sophistication. We agree. *See Sunenblick v. Harrell*, 895 F.Supp. 616, 631 (S.D.N.Y.1995), *aff'd* 101 F.3d 684 (2d Cir.1996) (Table). However, this conclusion does not alter our ultimate agreement that Marvin has not shown a probability of success on likelihood of confusion. Because Marvin's trade dress is not strong and the similarity of the two products with

labels and packaging included is only weak, Marvin has not demonstrated a likelihood of confusion notwithstanding the proximity of the products.

■ The district court also correctly concluded that the balance of hardships does not tilt decidedly toward Marvin. Marvin waited to bring its preliminary injunction motion until after Berger's screens had been shipped. Under these circumstances—which Marvin could have avoided by filing its lawsuit and making its motion earlier—Berger would have to pay its supplier yet be enjoined from selling the screens. Marvin's attempt to explain its delay by the existence of ongoing negotiations is unpersuasive. The negotiations appear to have consumed, at most, a period of about two weeks in January. Marvin could have filed its lawsuit as early as August 2000 and made a simultaneous application for a preliminary injunction. Thus its delay is relevant in balancing the hardships. *Cf. Tough Traveler,* 60 F.3d at 968 (stating that delay alone can justify denial of a preliminary injunction where the delay cannot be explained by ignorance of the infringing product or necessary investigation).